IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | CR No.: 3:07-1014-JFA |
| | ) | 3:09-1176-JFA |
| v. | ) | |
| | ) | MEMORANDUM OPINION |
| ROBERT DEVON PRIESTER | ) | AND ORDER |
| _____ | ) | |

This matter is before the court on defendant's motion, through counsel, for a reduction of his sentence in light of § 404(b) of the First Step Act of 2018[1] as it relates to crack cocaine offenses and retroactive application of the Fair Sentencing Act of 2010.[2]

The First Step Act of 2018 was signed into law on December 21, 2018. One of the changes in the Act relates to the Fair Sentencing Act of 2010 which, among other things, reduced statutory penalties for cocaine base ("crack") offenses.[3] Specifically, § 404 of the First Step Act retroactively applies the reduced penalties under the Fair Sentencing Act to "covered offenses" committed *before* August 3, 2010.

The court that imposed a sentence for a covered offense may on its own or on a motion of the defendant, the Director of the Bureau of Prisons, or the attorney for the government, impose a reduced sentence as if the Fair Sentencing Act of 2010 were in effect

---

[1] Pub. L. 115-015 (S. 756), 132 Stat. 015 (enacted Dec. 21, 2018).

[2] Pub. L. 111-220; 124 Stat. 2372 (2010).

[3] Effective August 3, 2010, the Fair Sentencing Act reduced the amount of cocaine base needed to trigger certain statutory minimum and maximum sentences. *See* 21 U.S.C. § 841(b)(1)(A)(iii) (raising from 50 to 280 grams the amount of cocaine base needed to trigger statutory range of 10 years to life in prison); 21 U.S.C. § 841(b)(1)(B)(iii) (raising from 5 to 28 grams the amount of cocaine base needed to trigger statutory range of 5 to 40 years in prison).

1

at the time the covered offense was committed. A court may not entertain a motion to reduce a sentence if the sentence was previously imposed or reduced in accordance with the amendments made by the Fair Sentencing Act of 2010 or if a previous motion to reduce the sentence was denied after a complete review of the motion on the merits. Finally, nothing in the Act shall be construed to require a court to reduce any sentence based on the Act's retroactive application of the Fair Sentencing Act of 2010.

The mechanism for bringing First Step Act motion is found at 18 U.S.C. § 3582(c)(1)(B), which states that a "court may modify an imposed term of imprisonment to the extent otherwise expressly permitted by statute." *United States v. Wirsing*, 943 F.3d 175 (4th Cir. 2019). This court's authority for granting an FSA motion is broad. Under this provision, "there is no limiting language to preclude the court from applying intervening case law" when evaluating an FSA motion. *United States v. Chambers*, 956 F.3d 667, 672 (4th Cir. 2020). Furthermore, 18 U.S.C. § 3553(a) "sentencing factors apply in the § 404(b) resentencing context." *Id*. at 674. Finally, "the resentencing court has discretion within the § 404(b) framework to vary from the Guidelines and, in doing so, to consider movants' post-sentencing conduct." *Id*.

It does not automatically follow, however, that the sentence must be reduced. Indeed, the First Step Act indicates, in two different sections, that any relief awarded is discretionary with the sentencing court. Under § 404(b) of the First Step Act, the court "may," but is not required to, grant statutory relief. The discretionary nature of the relief is further emphasized in § 404(c) of the First Step Act. Building on the "may" language in § 404(b), this section

provides that "nothing in the section is to be construed to require a court to reduce any sentence" under the Act.

On July 16, 2020, the Federal Public Defender's Office in the District of South Carolina filed the present motion on behalf of the defendant (ECF No. 1423).  The United States Probation Office prepared a Sentence Reduction Report (SRR) and concluded that the defendant was convicted for a covered offense (Count 1 in CR No. 07-1014) and that he is eligible for consideration of a reduced sentence and term of supervised release.  However, the defendant's sentence of 300 months was imposed by this court pursuant to binding plea agreement as stipulated to by the parties pursuant to Fed. R. Crim. P. 11(c)(1)(C). (ECF No. 37, CR 3:09-1176, ¶ 7).

The government concedes that the defendant is eligible for relief under the First Step Act, but requests that the court exercise its discretion and decline to reduce the defendant's sentence.

By way of background, on August 29, 2008, the defendant pleaded guilty pursuant to a written plea agreement (ECF No. 586) to Count 1 (a lesser amount) of the Superseding Indictment in case No. 3:07-1014, charging him with conspiracy to possess with intent to distribute 5 grams or more of cocaine base in violation of 21 U.S.C. §§ 846, 841(a)(1) and 841(b)(1)(B).  The government notified the defendant pursuant to 21 U.S.C. § 851 that he was subject to increased penalties based upon a 2003 felony conviction for possession with intent to distribute marijuana.

At the end of the guilty plea colloquy, the court inquired as to the defendant's status

pending sentencing. He had previously been released on bond by the United States Magistrate Judge and defense counsel spoke up arguing that because he had complied with all of the conditions of his bond up to that point, he should be allowed to remain free on bond pending his sentencing hearing. When this court observed that compliance with all bond conditions was not the test for determining whether someone should remain out on bond after pleading guilty to a controlled substance offense, the Assistant U.S. Attorney handling the case intervened and indicated that because the defendant was cooperating, the government would not oppose the defendant remaining on bond pending sentencing. (ECF No. 986, Transcript of Aug. 29, 2008 guilty plea at 66–68).

While on bond and awaiting sentencing, the defendant was arrested by the Columbia Police Department and charged with murder for an incident that occurred on December 28, 2008. The following November 2009, the defendant was indicted in this District in criminal case No. 3:09-1176-JFA and later pleaded guilty to being a felon in possession of a firearm while on federal release in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2), and 3147. His written plea agreement (ECF No. 37) contained a stipulation by the parties to a sentence of 300 months (for both the drug distribution plea [CR No. 01-1014] and the felon in possession plea [CR No. 09-1176]) pursuant to Fed. R. Crim. P. Rule 11(c)(1)(C).

Both the plea agreement and the transcript[4] of the Rule 11 guilty plea colloquy reveal that the agreed upon sentence was just that—an agreed upon sentence. In other words, it was

---

[4] To obtain the transcript of the Rule 11 colloquy for the defendant's second guilty plea in CR No. 3:09-1176, this court was required to track down the long-retired court reporter who had considerable difficulty locating his records necessary to produce the transcript.

not tied in any way to Guideline calculations for the defendant's multiple offenses. (ECF No. 80 at 2 (Partial transcript of April 28, 2010, Guilty Plea filed in CR No. 3:09-1176).

On August 16, 2010, the defendant appeared before this court for sentencing in his two criminal cases and his Guidelines were calculated as follows:

As to the drug charge, the defendant was held accountable for 1,546.5 kilograms of marijuana equivalent for a base offense level of 30.

Regarding the firearm charge, the defendant had a base offense level of 20, plus a 4-level enhancement for possession of the firearm in connection with another felony offense; the murder cross-reference was applied [USSG 2A1.1(a), First Degree Murder ¶ 71] which calls for a base offense level of 43; he received a 3-level adjustment because the statutory enhancement under 18 U.S.C. § 3147 (commission of offense while on release) applied. This created an adjusted offense level of 46.

3. When the charges from the two criminal cases were combined pursuant to USSG § 3D1.4 [¶ 76 combined offense level is determined by taking the offense level applicable to the group with the highest offense level and increasing the offense level based on the appropriate number of units assigned to each group] the combined adjusted offense level was 46. However, an offense level of more than 43 is treated as an offense level of 43. [USSG Ch. 5, A].

As indicated by the SRR, after application of the First Step Act, the defendant's newly calculated Guideline range is 480 months, which is 15 years more than the agreed upon sentence the defendant received as a result of the Rule 11(c)(1)(C) stipulation in his plea

agreement in CR 3:09-1176.  And, as noted above, the agreed upon sentence was in no way tied to the Guidelines that existed at the time.  For this reason alone, the court would exercise its discretion not to reduce the defendant's sentence below the agreed upon 300-month sentence.

Moreover, were the court to go further and consider the factors under 18 U.S.C. § 3553(a), the court would again conclude that a sentence reduction is not called for.  The § 3553(a) factors are as follows:

> [T]he nature and circumstances of the offense and the history and characteristics of the defendant; the need for the sentence imposed . . . to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense; to afford adequate deterrence to criminal conduct; to protect the public from further crimes of the defendant; . . . the kinds of sentences available . . . and the sentencing range establish[ed] for the . . . offense committed . . . as set forth in the [G]uidelines[.]

18 U.S.C. § 3553(a).

1.  *Nature and Circumstances of the Offense*.  The defendant's conduct was extraordinarily grave in this case.  Not only did he plead guilty to his role in a large-scale drug conspiracy, while on bond pending sentencing for that charge, he was involved in an even more serious offense.  According to the facts contained in the PSR, the defendant and an associate retaliated for an earlier dispute by firing several shots into the residence of an individual with whom they had had a dispute.  A family member was struck in the upper body and died as a result.  The defendant later admitted firing at least four rounds into the residence.  So taking the § 3553(a) factor of the "Nature and Seriousness of the Offense," suffice it to say that these were most serious offenses.

2. *History and Characteristics of the Defendant.* The defendant is currently 39 years old and has received credit for time served since November 17, 2009. The defendant has demonstrated a lack of ability to conform his conduct with the law. At the time of his federal drug arrest, he had a prior felony conviction for drug distribution, a criminal domestic violence conviction, and a string of misdemeanor drug arrests. While on federal bond, he failed to refrain from criminal activity and became involved in the shooting and killing of another human being. While incarcerated the Bureau of Prisons, the defendant has continued to show his disrespect for authority. His disciplinary record includes the following violations:

- On June 9, 2015, the defendant was sanctioned for giving or accepting money without authority. He was punished by losing his telephone and commissary privileges for 120 days, suspended pending 180 days of clear conduct.

- On December 10, 2015, just after the 180 days had past, the defendant was cited for refusing to obey an order. For that he lost telephone and commissary privileges.

- On March 23, 2016, he was sanctioned for possessing drugs or alcohol for which he lost 41 days of Good Time Credit, and was given 20 days of disciplinary segregation. This was suspended depending on 180 days of clear conduct. He also lost his commissary privileges for 6 months. Additionally, he lost visitation privileges for 6 months and for the following 6 months he was permitted visitation by an immediate family member only.

- On April 20, 2016, the defendant was sanctioned for refusing a work or program assignment. For this he lost 2 months of telephone privileges. That same day, he was sanctioned for engaging in sexual acts, for which he lost 27 days of Good Time Credit and was placed in disciplinary segregation for 15 days, suspended upon 180 days of clear conduct.

- On December 20, 2017, the defendant was disciplined for introduction of drugs or alcohol into the prison. For this violation, he lost 41 days of Good Conduct Time, forfeited 90 days of Good Time Credit, and lost telephone and commissary privileges for 180 days.

- On June 23, 2020, shortly after filing the present motion and requesting that he be sentenced to time served, the defendant was sanctioned for giving or accepting money without authority. He was punished by losing Tru-Link privileges for 30 days.

At the court's request, defendant's current legal counsel has furnished the court with a copy of the defendant's vocational and educational record and his Reentry Plan. This document (ECF No. 79) reveals that the defendant has participated in a total of 32 courses while incarcerated. While this is an impressive number, closer examination reveals that some of the courses for which the defendant has received credit required little effort and were of minimal rehabilitative value. For example, of the 32 courses, six of them were earned between January 11, 2011 and February 11, 2011. These credits were for the following:

- 20,000 Thousand Leagues Under the Sea;

- Biographies — Sports

- Classic Lit — Sherlock Holmes;

- Classic Lit — Last of the Mohicans;

- Classic Lit — Ivan Hoe

Additional courses for classes such as "colored pencil class," "basic walking class," "beginner's wellness," and "managing change" appear to be courses that were earned in very short time and required some, but not extensive effort on the part of the defendant.

Commendably, the defendant has earned his GED while at the BOP.

Accordingly, balanced against his disciplinary records recited above, the defendant's conduct in prison has not been exemplary.

Addressing the remaining § 3553(a) factors, the court finds as follows:

(3) *Seriousness of the Crimes*. As noted, this court regards the defendant's crimes as very serious, fully supportive of a significant sentence.

(4) *Whether the Sentence Promotes Respect for the Law and Just punishment for the offense*. The court finds a significant sentence is necessary to promote respect for the law and just punishment

(5) *Whether the Sentence Affords Adequate Deterrence to Criminal Conduct*. The court finds that a significant sentence is necessary to provide both general and specific deterrents.

(6) *Whether the Sentence Protects the Public from Future Crimes of the Defendant*. The court finds that a significant sentence is necessary to protect the public from future crimes of the defendant.

(7) *Need to Avoid Unwarranted Sentencing Disparities*. The defendant's current sentence is not disproportionate to those similarly situated defendants in this case.

*Additional Argument of the Defendant*

In a supplement to his original motion, the defendant adds an entirely new argument. He contends that his guidelines were incorrectly calculated and that, in considering the motion for a reduction in sentence, the court should consider the correctly calculated

guidelines to determine if a reduction is appropriate. [5]

Pursuant to § 3D1.1(a) of the United States Sentencing Guidelines Manual (USSG) (2009 edition), when a defendant has been convicted of more than one count, the court shall:

1. Group the counts resulting in conviction into distinct Groups of Closely Related Counts ("Groups") by applying the rules specified in § 3D1.2.

2. Determine the offense level applicable to each Group by applying the ruled specified in § 3D1.3.

3. Determine the combined offense level applicable to all Groups taken together by applying the rules specified in § 3D1.4.

The defendant's two counts of conviction in two separate criminal cases (07-1014 and 09-1176) were not "closely related"—they did not involve the same victim, act, or transaction, they were not connected by a common criminal objective, nor did they constitute part of a common scheme or plan. Accordingly, the offenses could not be grouped.

Having determined that the offenses are not closely related, the court must then determine the offense level applicable to each Group. Those levels were calculated as follows:

On the drug charge, the defendant was held accountable for 73.92 grams of crack cocaine and 340.5 grams of cocaine. According to the Drug Equivalency table, these drugs convert to a total of 1,546.5 kilograms of marijuana equivalent (1,478.4 + 68.1). This would

---

[5] The detailed calculations contained in this section of this order were spelled out for this court in a letter from the U.S. Probation Office dated April 21, 2021 which will be filed with the Clerk. This letter also points out that the new argument asserted in the defendant's supplemental motion is identical to the arguments made by defendant's trial counsel in Objections 5 and 7 to the original PSR (ECF No. 967). The court thus rejected this argument 11 years ago.

ordinarily result in an offense level of 32; however, USSG § 2D1.1, Application Note 10(D) directed that, for offenses involving crack and one or more other controlled substances, the base offense level was determined by the greater of the following: 1) the offense level for the total amount of marijuana equivalent minus two levels (32-2=30), or ) the offense level for the marijuana equivalent of all drugs other than cocaine (22). Therefore, the base offense on the drug charge was 30.

As to the gun charge, the defendant had a base offense level of 20 pursuant to USSG § 2K2.1(a)(4)(A). He received a 4-level increase because the defendant used the firearm in connection with another felony offense. However, because the defendant used the firearm in connection with an offense where death resulted, a cross reference was applied, using the most analogous guideline from Chapter 2, which was found at USSG §2A1.1(a), First Degree Murder and called for a base offense level 43.

Finally, the defendant received a 3-level enhancement for having committed the offense while on bond. USSG § 3C1.3, 18 U.S.C. § 3147. This resulted in an offense level of 46.

The court then determined the combined offense level by applying the rules specified in § 3D1.4. First, the gun count was identified as the most serious count and assigned one unit. Because the drug count was 9 or more levels lower than the gun count, it was not assigned a unit; thus, the total number of units was 1. The combined offense level was then determined by taking the offense level applicable to the Group with the highest offense level—in this case, 46—and increasing that level by the amount indicated in the table found

at § 3D1.4, in this case "none." This would result in an offense level of 46; however, the highest offense level is 43, so the total offense level became 43. With a criminal history category of IV, the defendant's guideline range was appropriately calculated at life.

USSG § 5G1.2 sets forth the procedure by which a court sentences a defendant on multiple counts of conviction. Except as provided by § 5G1.2(a) and as otherwise provided by law, the sentence imposed on each count shall be the total punishment. USSG § 5G1.2(b). When, as is relevant here, the sentence imposed on the count carrying the highest statutory maximum is adequate to achieve the total punishment, then the sentences on all counts are to run concurrently. USSG § 5G1.2, Application Note 1.

Here, the defendant faced a maximum sentence of life on the drug charge, a maximum of 10 years on the gun charge, and up to 10 consecutive years for having committed the gun charge while on federal bond. Because the maximum the defendant faced on the drug charge was adequate to cover the length of the total sentence, the sentence on the gun charge was ordered to run concurrently; there was no need for it to run consecutively. USSG § 5G1.2

The defendant asks this court to consider that 18 U.S.C. § 841 has been amended since he was sentenced in deciding whether to grant relief. The defendant was convicted of Conspiring to Possess with Intent to Distribute 5 grams or more of Crack, an offense which, at the time, carried a statutory maximum of 40 years or, with a prior felony drug conviction, life. He had a prior felony drug conviction and thus faced life. 21 U.S.C. § 841(b)(1)(B).

After the Fair Sentencing Act of 2010, the statute requires 28 grams or more of crack to trigger the penalties under § 841(b)(1)(B); accordingly, if the defendant were prosecuted

12

today, he would face the penalty set forth in § 841(b)(1)(C), that is, a statutory maximum of 30 years. Because 30 years is not adequate to accomplish the total sentence—life—the court would necessarily impose the sentences consecutively (USSG § 5G1.2, Application Note 1); that is, the defendant would face a maximum of 30 on the drugs, plus 10 years on the gun, plus up to 10 because the offense was committed while on bond. Therefore, if sentenced today, the court could impose a sentence of 50 years, rather than life. Here, the defendant was sentenced to an agreed upon sentence of only 300 months (25 years), a sentence well below the sentence of 50 years (600 months) that he could receive.

The defendant's Guidelines were appropriately calculated and, even if the court considers the intervening change in law, he received a sentence far lower than the guideline range he faced.[6]

Having calculated and considered the advisory sentencing Guidelines, the relevant statutory sentencing factors under 18 U.S.C. § 3553(a), the recently adopted provisions of

---

[6] The defendant advises the court that he ultimately pled guilty in state court to Voluntary Manslaughter, and contends that, therefore, he should not have been subject to the cross reference for murder. However, the applicability of the enhancement is based upon the defendant's underlying conduct, not on the actual charge to which he pled, and this court previously found the murder cross reference to be appropriate.

13

the First Step Act, and the full record in this matter, accordingly, the defendant's motions (ECF Nos.1423; 55, 62) are denied for the reasons stated above. The court reaches this conclusion after carefully considering the individualized circumstances of the case.[7]

IT IS SO ORDERED.

September 20, 2021
Columbia, South Carolina

Joseph F. Anderson, Jr.
United States District Judge

---

[7] The defendant filed a separate civil action CA No. 20-1294-JFA-MHC where he brings a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. The Magistrate Judge issued her Report and Recommendation on September 10, 2021 (ECF No. 44). The time to file objections to the Report has not yet expired as of the date of this order. In that case, the defendant contends that his conviction and sentence for being a felon in possession under § 922(g)(1) should be vacated in light of *Rehaif v. United States*, 139 S.Ct. 2191 (2019) because an element of the offense was not charged and was not proven beyond a reasonable doubt. That matter will be reviewed by this court after the time for the parties to file objections to the Report has expired.